# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMAR CHATTERJEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-2402 (RC) |
| | ) | |
| WILBUR L. ROSS, JR., Secretary, | ) | |
| U.S. Department of Commerce, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 43).  For the reasons discussed below, the Court grants defendant's motion.

## I. BACKGROUND

### A. Plaintiff's Amended Complaint

Plaintiff, proceeding *pro se*, filed his complaint (ECF No. 1) on November 7, 2016, asserting claims under Title VII of the Civil Rights Act ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, *see* 29 U.S.C. § 701 *et seq.*

Appointed counsel entered his appearance (ECF No. 19) on October 10, 2017, and on June 22, 2018, he filed an amended complaint (ECF No. 27) on plaintiff's behalf.  The amended complaint alleges that defendant discriminated against plaintiff on the bases of race (Asian), national origin (India), and age (over 40 years), *see* Am. Compl. ¶¶ III, IV, IX, X, XII, in

---

[1] The current Secretary of Commerce is substituted as the party defendant pursuant to Fed. R. Civ. P. 25(d).

violation of Title VII and the Age Discrimination in Employment Act ("ADEA"), *see* 29 U.S.C. § 621 *et seq.*[2]

**B. Local Civil Rule 7(h)**

Pursuant to the Court's February 21, 2019 Order (ECF No. 35), discovery was limited to the claims set forth in the amended complaint and to the denials and defenses set forth in defendant's answer (ECF No. 28).  The Order set May 8, 2019, and August 22, 2019, as the deadlines, respectively, for fact and expert discovery.  Twice the Court extended discovery for the purpose of taking plaintiff's deposition (May 13, 2019 Minute Order) and the depositions of three former agency employees (July 11, 2019 Minute Order).  Only plaintiff's deposition was taken.  *See* Reply to Pl.'s Opp'n to Def.'s Mot. for Summ. J. (ECF No. 49, "Reply") at 4, 10-11.  Defendant filed his summary judgment motion (ECF No. 43) on March 10, 2020.

In relevant part, Local Civil Rule 7 provides:

> Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement. An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement . . . .  In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

---

[2]  There is a single mention of the Rehabilitation Act in the amended complaint.  *See* Am. Compl. ¶ III.  The Court presumes this is an oversight on counsel's part.  No other factual allegations pertain to the Rehabilitation Act or suggest that defendant unlawfully discriminated against plaintiff on the basis of a disability, and plaintiff's opposition to defendant's summary judgment motion mentions only discrimination based on race, national origin, and age.  *See, e.g.,* Pl.'s Opp'n at 3, 5.

LCvR 7(h); *see* Fed. R. Civ. P. 56(c).

In compliance with Local Civil Rule 7(h), defendant submitted a Statement of Material Facts Not In Genuine Dispute (ECF No. 43 at 2-8, "SMF") in 23 sequentially numbered paragraphs with citations to the portions of the record on which he relies.  Plaintiff's statement purportedly sets forth seven material facts in dispute.  *See* Pl.'s Mem. of P. & Response to Def.'s Mot. for Summ. J. (ECF No. 47, "Pl.'s Opp'n") at 2 (page numbers designated by ECF).  These seven "facts" do not correspond to any of defendant's assertions, however, and nowhere does plaintiff identify the portions of the record on which he relies.  Plaintiff's opposition includes a list of exhibits, *see id.* at 4, but the exhibits themselves were not attached.  And notwithstanding plaintiff's reliance on his own deposition testimony, *see, e.g., id.* at 3, 4, 12, plaintiff has not attached relevant portions of the deposition transcript to his opposition.

The Court finds that plaintiff neither complied with Local Civil Rule 7(h) nor controverts defendant's assertions of fact.  Therefore, the Court assumes that defendant's assertions of fact are admitted.  *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996).

### C. Defendant's Asserted Facts

The Bureau of the Census, a component of the U.S. Department of Commerce, collects and provides "statistical data about the people and economy of the United States."  SMF ¶ 2.  In addition to "conducting the constitutionally-mandated Decennial Census, [it] collects statistical data through surveys and censuses conducted through field operations."  *Id.*

In April 2014, defendant "began operations for its 2014 Census Test" from a Local Census Office ("LCO") in Silver Spring, Maryland.  *Id.* ¶ 8; *see id.*, Ex. 4.  The test was to "explore new methods and advanced technologies that could significantly improve the . . . 2020

Census." *Id.* ¶ 9.  Defendant hired temporary employees, including enumerators, *id.* ¶ 10, whose "responsibilities include: locating households and conducting interviews with respondents, explaining the purpose of the census, asking questions as worded on census device, and recording data on a census device," *id.*, Ex. 5.  Interviews "to obtain sensitive personal information from" respondents usually took place in the respondents' homes.  *Id.* ¶ 10. "Particularly because they enter residents' homes with the government's imprimatur, all enumerators were required to satisfactorily complete a background check."  *Id.*

Only after the background check was favorably concluded would an enumerator become eligible for training.  *See id.* ¶¶ 15, 17.  There were two four-day technical training sessions for enumerators, the first from August 11, 2014 through August 14, 2014, and the second from August 18, 2014 through August 21, 2014.  *Id.*  Defendant expected to hire and train more enumerators than actually were needed to complete the 2014 Census Test.  *Id.*  "Approximately [30] enumerators were cleared and worked under [p]laintiff's would-be supervisor during the 2014 Census Test."  *Id.* ¶ 23.

Plaintiff accepted a temporary appointment as an enumerator on July 23, 2014, "with a not to exceed (NTE) date of September 23, 2014."  *Id.* ¶ 11.  The appointment was "contingent upon the satisfactory completion of a background investigation."  *Id.*; *see id.*, Ex. 6.  On July 23, 2014, plaintiff "attended Administration Day at the [LCO]," at which time plaintiff "was fingerprinted and filled out the necessary paperwork to start his background investigation."  *Id.* ¶ 11.  LCO staff submitted these documents to the Census Hiring & Employment Check ("CHEC") office.  *Id.*

On July 23, 2014, the assigned CHEC investigator submitted plaintiff's fingerprints to the FBI's Criminal Justice Information Service ("CJIS"), and the "rapsheet" CJIS generated

reflected that plaintiff had "spent at least two . . . years in prison after pleading guilty to charges relating to defrauding the federal government and a local government district in Illinois." *Id.* ¶ 12; *see generally id.*, Ex. 8.[3]  Here, the investigator followed the FBI's recommendation that, "when explanation of a charge or disposition is needed," the requester should "communicate directly with the agency that furnished the data to the FBI." *Id.*, Ex. 8 at 3 (ECF No. 43-1 at 18); *see id.* ¶ 12.

On August 1, 2014, the CHEC investigator contacted plaintiff's former parole officer by telephone, *id.* ¶ 12, and on August 4, 2014, she sent by email a request for documents, *see id.*, Ex. 10 at 1 (ECF No. 43-1 at 22). The parole officer advised that, because plaintiff's case was

---

[3]  The Seventh Circuit summarized plaintiff's history as follows:

> In 1989 Samar Chatterjee pleaded guilty to three counts of mail fraud after billing the federal and state Environmental Protection Agencies and the South Stickney[, Illinois] sanitary district for consulting work he had not actually completed.  The court dismissed the remaining counts against him (the record does not reflect how many remaining counts there were) . . . .  On one of the mail fraud counts (count 2), the court sentenced him to four years' imprisonment; the court suspended the sentences on the remaining mail fraud counts (counts 31 and 32) and ordered him to serve five years' probation on each count, concurrent to each other but consecutive to his term of imprisonment. The court also ordered him to pay $ 220,000 in restitution.

> After he was released from prison and had completed his parole, Chatterjee began to serve probation. But a short time later he left the country without permission from his probation officer or the court and traveled to India to care for his dying father.  The court issued a warrant for his arrest, and some ten years later police took him into custody when he illegally reentered the United States. Chatterjee admitted at his probation revocation hearing that he had violated the terms of his probation, and the district court sentenced him to two years' imprisonment on count 31, two years' probation on count 32, and reimposed restitution.

*United States v. Chatterjee*, 70 F. App'x 387, 388-39 (7th Cir. 2003).

inactive, the files had been archived and their retrieval "could take 'a couple of weeks.'" *Id.* ¶ 12.

The CHEC investigator notified plaintiff of the status of the investigation on August 25, 2014. *Id.* ¶ 13. In an effort "to speed processing of his case," *id.*, Ex. 10 at 2, the CHEC investigator "offered [p]laintiff the opportunity to provide the needed documentation" himself. *Id.* ¶ 13. Plaintiff explained "that he had left his court documents in a friend's basement years ago when he moved from Chicago," and advised the investigator to "wait for official correspondence from Chicago parole officer." *Id.*, Ex. 10 at 2. The relevant documents arrived, and on August 27, 2014, defendant "deemed [p]laintiff 'favorable.'" *Id.* ¶ 14; *see id.*, Ex. 10 at 3 (ECF No. 43-1 at 24).

By the time plaintiff's background investigation successfully completed, both training sessions had concluded. *See id.* ¶ 16. "[O]nly those enumerators who had their background checks favorably completed before the final training session could receive training and subsequently be assigned work." *Id.* ¶ 17. Neither plaintiff nor any of the other enumerators cleared by the CHEC office after August 21, 2014, were trained or assigned work. *See id.*

The 2014 Census Test concluded on September 18, 2014. *Id.* ¶ 18. Defendant terminated plaintiff's temporary appointment on September 19, 2014, "for lack of work." *Id.* ¶ 19.

Plaintiff filed a complaint of discrimination with the Commerce Department's Office of Civil Rights on September 8, 2014. *Id.* ¶ 3. According to plaintiff, Warren Gibson, a supervisor, acted in a "suspicious, discriminatory and very discouraging" manner at the Administration Day on July 23, 2014. *Id.*, Ex. 1 (ECF No. 43-1 at 1). Gibson allegedly "did not give [plaintiff] copies of [the] documents" he filled out at the Administration Day event and said aloud that "he

did not like Asians." *Id.*, Ex. 1.  Gibson also allegedly said that "he wanted Blacks to work

only," and plaintiff asserted that "background check delays [were] deliberately contrived." *Id.*,

Ex. 1.  The Equal Employment Opportunity Commission ("EEOC") dismissed plaintiff's claim

on September 9, 2016.  *Id*. ¶ 5; *see generally id.*, Ex. 2) (ECF No. 43-1 at 2-5).  It reasoned that

plaintiff incorrectly used "the EEO complaint process to lodge a collateral attack on another

process or proceeding, *see id.*, Ex. 2 at 2 (ECF No. 43-1 at 3), namely the background

investigation process, *id.* ¶ 5.

## II. DISCUSSION

### A. Legal Standard

The Court grants summary judgment when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the

litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-

movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).  The Court's inquiry is essentially

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at

251–52.

The principal purpose of summary judgment is to streamline litigation by disposing of

factually unsupported claims or defenses and determining whether there is a genuine need for

trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the

initial burden of identifying portions of the record that demonstrate the absence of any genuine

issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the

party opposing summary judgment must point to specific facts in the record that reveal a genuine

issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In doing so, the non-moving party

cannot rely on "statements that are impermissible hearsay or that are not based on personal

knowledge."  *Shuler v. District of Columbia*, 744 F. Supp. 2d 320, 327 (D.D.C. 2010) (citation

and quotations omitted).  In considering a motion for summary judgment, a court must "eschew

making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360,

363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most

favorable to the non-moving party, *see Anderson*, 477 U.S. at 255.

### B. The Parties' Evidentiary Burdens

In a case such as this, where plaintiff offers no direct evidence of discrimination, the

Court turns to "the three-step, burden-shifting framework set forth in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248

(1981)," recently summarized by the D.C. Circuit:

> Under the *McDonnell Douglas* framework, a plaintiff must make out
> a *prima facie* case of discrimination; once [he] has done so, the
> defending employer must "articulate some legitimate,
> nondiscriminatory reason" for its action.  *Burdine*, 450 U.S. at 252-
> 53 (quoting *McDonnell Douglas*, 411 U.S. at 802).  Should the
> employer carry its burden at the second step, the plaintiff must prove
> that the employer's asserted reasons "were not its true reasons, but
> were a pretext for discrimination."  *Id.* at 253.

*Jeffries v. Barr*, 965 F.3d 843, 859–60 (D.C. Cir. 2020).

On summary judgment, however, where the employer articulates a legitimate,

nondiscriminatory reason for an adverse employment action, the Court skips ahead to "resolve

one central question: Has the employee produced sufficient evidence for a reasonable jury to find

that the employer's asserted nondiscriminatory reason was not the actual reason and that the

employer intentionally discriminated against the employee on the basis of race, . . national

origin[, or age]?'" *Id.* at 860 (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 494 (D.C. Cir. 2008)); *see Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (applying *Brady* framework to ADEA claim).

The D.C. Circuit instructs that "an employer . . . must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Figueroa v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. 2019).  The evidence it produces "must suffice to raise a triable issue of fact as to intentional discrimination and to provide the employee with a full and fair opportunity for rebuttal." *Id.*  If the employer offers "a vague reason," it essentially is "offering no reason at all." *Id.*  However, the employer "need not persuade the court that it was actually motivated for the proffered reasons." *Burdine*, 450 U.S. at 254.

A plaintiff can demonstrate that the employer's stated reason was "not the actual reason" by "produc[ing] evidence suggesting that the employer treated other employees of a different race [or of a significantly younger age] . . . more favorably in the same factual circumstances" or by showing that the employer "is making up or lying about the underlying facts[.]" *Brady*, 520 F.3d at 495.  It is not enough to show that the employer's proffered reason "is not just, or fair, or sensible." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Rather, plaintiff "must show that the explanation given is a phony reason." *Id.*

### C. Background Investigation

Plaintiff alleges that defendant "deliberately delayed" the completion of his background investigation, Am. Compl. ¶ IX, for the purpose of "den[ying him] further work participation," *id.* ¶ VII.  Defendant argues that it not only "had a legitimate reason for conducting [plaintiff's] background investigation," but also had "a legitimate reason for taking the time necessary to

complete it." Def.'s Mem. of P. & A. in Support of its Mot. for Summ. J. (ECF No. 43, "Def.'s Mem.") at 12 (page numbers designated by defendant).

Because enumerators are expected to interview members of the public in their homes for the purpose of gathering sensitive personal information, defendant's offer of employment was contingent on the satisfactory completion of the background investigation.  Plaintiff's background investigation began on Administration Day, when plaintiff completed required paperwork and had his fingerprints taken.  On review of plaintiff's rapsheet, which reflected criminal convictions for having defrauded the government, the CHEC investigator determined that the investigation could not be completed without additional information.[4]  She contacted plaintiff's former parole officer and requested documents which had to be retrieved from archives.  The investigation concluded on August 27, 2014, with a favorable finding.  Thus, defendant argues, "[t]he facts do not support [p]laintiff's argument that [d]efendant deliberately delayed his background investigation as a means of discriminating against him."  Def.'s Mem. at 9.  Rather, defendant demonstrates that plaintiff's background investigation began promptly on July 23, 2014, and even plaintiff acknowledges that "the timing of [the] background check was due to time constraints outside [defendant's] control[.]"  Pl.'s Opp'n at 12.

---

[4]  Defendant suggested two reasons why the CHEC investigator may have made further inquiries.  First, it may have appeared that information plaintiff provided on his employment application was inconsistent with information on the rapsheet.  When asked on the employment application whether, "[d]uring the last 7 years, have you been convicted, been imprisoned, been on probation, or been on parole," plaintiff on May 19, 2014, responded, "no."  Reply, Ex. 20 at 3 (ECF No. 49 at 61).  The dates set forth on the rapsheet may have suggested that plaintiff had been on parole within the seven-year period.  Second, a question may have arisen about the nature of plaintiff's criminal convictions.  "Given that [p]laintiff was seeking employment in a sensitive position for a federal department after having defrauded another federal government department, there can be little wonder as to the interest in the CHEC investigator getting to the bottom of the matter." Reply at 15 n.13.

Nevertheless, plaintiff claims that "[d]efendant has a history of delaying background investigation[s] as a means of discriminating against minorities." *Id.* at 13. He refers to a settlement agreement, *see, e.g., id.* at 3, 13, supposedly to show that defendant "was responsible for not aggressively addressing the clearing up the issues of its applicant," *id.* at 13. Despite his claim to have "provide[d] quantifiable and provable history that the agency delays background investigations," *id.* at 12, plaintiff fails to produce either a copy of the settlement agreement or a citation to the underlying lawsuit. Furthermore, as defendant notes, *see* Reply at 17-19, plaintiff offers no basis from which to conclude that the settlement agreement would be admissible in evidence or that plaintiff was a member or would qualify as a member of that protected class.

In addition, plaintiff attributes the intentional delay in completion of the background investigation to the "Racist statements" of two former temporary employees, Warren Gibson and Cheryl Bradley. Pl.'s Opp'n at 2. Allegedly, plaintiff "overheard" Mr. Gibson say that he did not like plaintiff because plaintiff "was too old and Asian[.]" *Id.* Ms. Bradley allegedly responded, "don't worry I will hold up his background investigation." *Id.* These assertions first appeared in plaintiff's administrative charge of discrimination before the Commerce Department's Office of Civil Rights, *see generally* Def.'s Mem., Ex. 1, and are referenced in plaintiff's original *pro se* complaint:

> The sinister nature of this Plaintiff's case can be underscored by a conversation the Plaintiff overheard at work on July 23, 2014 when his supervisor (Mr. Gibson) whispered to his Boss "I don't like this fellow. He is very old and Asian. I can't deal with these people. If you can hold up his background check, I will get your girl to work in his place". In fact, that is exactly the reason the Defendant's staff delayed the background clearance of the Plaintiff.

Compl. (ECF No. 1) at 2 (page number designated by ECF). According to plaintiff, these alleged statements were among the topics addressed during his deposition. *See* Pl.'s Opp'n at 2, 5. Plaintiff's reliance on Gibson's and Bradley's statements is misplaced.

The only evidence of Gibson's and Bradley's statements appears to be plaintiff's deposition testimony.  No portion of the deposition transcript is made a part of the record of this case, however.  Counsel's assertions and arguments pertaining to Gibson and Bradley are wholly unsupported.

But even if plaintiff could prove that Gibson and Bradley made the offending statements, the statements fail to demonstrate the existence of a genuine issue of material fact.  The statements cannot be considered direct evidence of discrimination because plaintiff fails to establish that either Gibson or Bradley played a role in a delay of plaintiff's background investigation.  *See Holbrook v. Reno*, 196 F.3d 255, 260 (D.C. Cir. 1999) (declining to consider as evidence of direct discrimination the conduct of an official who was not shown to have participated in agency's decision that plaintiff was unsuitable candidate).  To the contrary, the record establishes that plaintiff's background investigation commenced on the same day he submitted his information on Administration Day.

Admittedly, plaintiff's background investigation was not completed in time for plaintiff to have participated in the August training sessions and, consequently, defendant did not assign plaintiff any work.  But plaintiff proffers no evidence to show that the length of time taken to complete the investigation was unusual or unusually long, that Gibson or Bradley played any role in that process, that they or anyone else deliberately prolonged the process, that defendant's asserted nondiscriminatory reason was not the actual reason for its action, or that defendant instead discriminated against plaintiff based on his race, national origin or age.

### D. Termination

Even though plaintiff "is not objecting to the background check" itself as a job qualification, Pl.'s Opp'n at 14, he asserts that defendant "deliberately delayed" completion of

the background investigation as pretext for terminating him "without legally supported cause," Am. Compl. ¶ IX.  According to defendant, "[p]laintiff's temporary employment . . . ended for lack of work – the Test ended."  Def.'s Mem. at 13.  Even if plaintiff's background investigation had been completed favorably in time for participation in one of the two technical training sessions, defendant represents that plaintiff's employment would have terminated on September 23, 2014, anyway, "like the other enumerators hired to work on the 2014 Census Test[.]"  *Id.* at 13-14.

Plaintiff acknowledges that he "was terminated . . . for not having a timely background investigation."  Pl.'s Opp'n at 2.  This acknowledgement is not inconsistent with defendant's representations that, because plaintiff's background investigation was not deemed "favorable" before either final four-day training session commenced, he was ineligible for training and work assignments for a short-term project ending on September 18, 2014.  Still, he asserts that his "termination was based on racial, age and nationality discriminatory acts," Pl.'s Opp'n at 2, and proffers his "sworn testimony" and an alleged "history of . . . discrimination practices of the Defendant," *id.*  As stated above, however, plaintiff proffers neither deposition testimony nor any other evidence of discriminatory practices at the Census Bureau.  In short, plaintiff utterly fails to demonstrate that defendant's stated reason for termination – the end of a short-term project – was not the real reason for an adverse employment action.  Without more, no reasonable trier of fact could find that Defendant's stated, nonretaliatory reason was pretext for discrimination.

### E. Non-Selection for Other Positions

According to plaintiff, he "has not been rehired to perform from the census despite the need for people with his background," and that defendant's failure to hire him amounts to retaliation.  *See* Pl.'s Opp'n at 6.  There are no such allegations in the amended complaint,

however, and plaintiff cannot raise an entirely new claim of retaliation at this late date.  Nor can

plaintiff pursue a claim arising from these new alleged non-selections because he failed to

exhaust his administrative remedies prior to filing this lawsuit.  *See Scott v. Johanns*, 409 F.3d

466, 468 (D.C. Cir. 2005) (citing 42 U.S.C. § 2000e–16) ("Title VII . . . provides that before

filing suit, an individual alleging that a federal agency engaged in employment discrimination

must seek administrative adjudication of the claim."); *Payne v. Salazar*, 619 F.3d 56, 65 (D.C.

Cir. 2010) ((citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)).

The Court may entertain only the "claims . . . that were actually part of the administrative

charge" and "claims that are 'like or reasonably related to the allegations of the charge and

growing out of such allegations.'"  *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526

(D.C. Cir. 2019) (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)).  Plaintiff's

EEO complaint does not raise a claim that defendant refused to hire him for any position, and the

Court cannot entertain the claim now.[5]

## III. CONCLUSION

The Court concludes that defendant presented legitimate nondiscriminatory reasons for

its employment decisions and that plaintiff fails to demonstrate that defendant's reasons were

mere pretext for discrimination.  Accordingly, the Court grants defendant's motion for summary

judgment.  An Order is issued separately.

DATE:  November 16, 2020                         /s/
                                                 RUDOLPH CONTRERAS
                                                 United States District Judge

---

[5]  To the extent that plaintiff raises these alleged non-selections as evidence of the agency's
discriminatory motive, rather than as new, separate claims, he provides no information
concerning these alleged non-selections, thus depriving the naked allegation of any evidentiary
value.